UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE 1, et al.,                          :
                                             :CIVIL ACTION NO. 3:18-CV-1513
            Plaintiffs,                       :
                                             :(JUDGE MARIANI)
    v.                                        :(Magistrate Judge Carlson)
                                             :
LIBERTY MUTUAL FIRE INS. CO.,                 :
                                             :
            Defendant.                        :
                                             :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 17) by

Magistrate Judge Martin C. Carlson in which he recommends that the Motion of Defendant,

Liberty Mutual Fire Insurance Company, to Dismiss the Complaint (Doc. 6), be granted

(Doc. 17 at 17). The Complaint at issue is a declaratory judgment action in which Plaintiffs,

who are also the plaintiffs in a state court action, seek a declaration that Defendant Liberty

Mutual Fire Insurance Company ("Liberty Mutual") has a duty to defend and indemnify the

defendants in the state court action who were insured by Liberty Mutual at the relevant time.

(Doc. 2 at 4-12.)  Magistrate Judge Carlson's recommendation is based on his conclusion

that Defendant has no duty to defend or indemnify the insureds under the policy at issue

based on both the policy's general liability coverage provisions and the sexual molestation

exclusion contained in the policy.  (Doc. 17 at 9-16.)

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to *de novo* review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id*. at 100 (internal citations and quotation marks omitted).

Plaintiffs timely filed objections to the R&R (Doc. 18) and a brief in support of the objections (Doc. 19). Defendant filed a response to the objections (Doc. 20), and Plaintiffs filed a reply (Doc. 21). Therefore, this matter is ripe for disposition.

Having conducted the required *de novo* review, the Court agrees with the R&R's conclusion that the Motion of Defendant, Liberty Mutual Fire Insurance Company, to Dismiss the Complaint (Doc. 6), should be granted. However, because the Court adds to the analysis set out in the R&R, the Court will adopt the R&R as modified.

## II. BACKGROUND

### A.    Factual and Procedural Background

In accordance with the standard of review for a motion to dismiss, the Court relies primarily on Plaintiffs' recitation of facts contained in their brief in opposition to the pending motion (Doc. 9 at 6-8). The factual assertions in Plaintiffs' brief reference those contained in their complaint in the underlying state court action. (*Id.* at 7-8.) Reference to the underlying state court complaint is appropriate because "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage," *Mutual Benefit Insurance Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999).

Procedurally, Plaintiffs initiated the instant action on June 29, 2018, by filing a Declaratory Judgment Complaint in the Court of Common Pleas of Lackawanna County against Defendant. (Doc. 2.) Plaintiffs state that they have filed this Declaratory Judgment Complaint

> seeking judgment from the Court that Defendant has a duty to defend D.H.
> and minor N.H. in the action brought against them filed to term number 16-
> CV-9198 in the Court of Common Pleas of Monroe County. Plaintiffs are

interested parties and thus necessary parties to the subject declaratory
judgment action.

(Doc. 9 at 6-7.)

On July 30, 2018, Defendant filed a Notice of Removal to the United States District

Court for the Middle District of Pennsylvania based on diversity jurisdiction. (Doc. 1.) On

August 1, 2018, Defendant filed the Motion of Defendant, Liberty Mutual Fire Insurance

Company, to Dismiss the Complaint (Doc. 6) and supporting brief (Doc. 7), asserting that

the underlying Monroe County complaint shows that it has no duty to defend or indemnify

the defendants in that action.

In their responsive brief (Doc. 9), Plaintiffs assert that

> [t]he underlying action arises out of serious injuries sustained by Plaintiff John
> Doe, 1, a minor, an incident that occurred on or about June 27, 2015. *See* a
> true and correct copy of the December 9, 2016 Complaint hereto as "Exhibit
> B," at ¶4. On that date, John Doe 1 was visiting minor N.H. at 1256 Chateau
> Drive, 4b, East Stroudsburg, PA 18301, which was the residence owned by
> minor N.H.'s mother D.H.. *Id.* On the aforementioned date and at all times
> pertinent hereto, John Doe 1 and [N.H.] were under the supervision and control
> of D.H.. *Id.*, at ¶5. On that date, while John Doe 1 was visiting with minor N.H.,
> minor N.H. sexually abused John Doe 1, who was five (5) years old at the time,
> causing substantial harm, both mental and physical, to John Doe 1. *Id.*, at ¶6.
> Minor Plaintiff John Doe 1 was too young to have given any consent and minor
> N.H.'s abuse was in fact unwanted and has caused substantial harm to Minor
> Plaintiff John Doe 1. *Id.*, at ¶7. Minor N.H. also forced John Doe 1 to watch
> pornographic videos. Id., at ¶8. As a result of the incident, John Doe 1, has
> suffered great emotional distress resulting in anxiety, self-aggression,
> stomachaches, decreased appetite, sleep disruption, and shock to his nerves
> and nervous system, all of which caused him, continue to cause him and
> will/may cause him for an indefinite time in the future, great pain, agony and
> suffering, both physical and mental. *Id.*, at ¶9.

4

On December 9, 2016, Plaintiffs filed the underlying Complaint against minor N.H. and his mother D.H. in the Court of Common Pleas of Monroe County, docketed to the term number 16-CV-9198. The Complaint alleges three (3) counts of negligence, three (3) counts of battery, three (3) counts of negligent infliction of emotion distress and three (3) counts of punitive damages. *Id.* The Complaint alleges that Plaintiff John Doe 1 suffered serious injuries arising out of the acts of D.H. and minor N.H. occurring at their household. *Id.*, at ¶¶9-13. Specifically, the Complaint alleges that Plaintiff John Doe 1 suffered great emotional distress resulting in anxiety, self-aggression, stomachaches, decreased appetite, sleep disruption, and shock to his nerves and nervous system, all of which caused him, continue to cause him and will/may cause him for an indefinite time in the future, great pain, agony and suffering, both physical and mental. *Id.*, at ¶9.

(Doc. 9 at 7-8.)

As set out above, the pending R&R recommends that the Court grant Defendant's

motion. (Doc. 17 at 17.)

## B.     Insurance Policy

Defendant's "LibertyGuard Deluxe Homeowners Policy" ("Policy") number H32-281-

299495-40 issued to D.H. was in effect from September 5, 2015, to September 5, 2016.

The policy contains the following relevant definitions: "'Bodily Injury' means bodily harm,

sickness or disease, including required care, loss of services and death that results"; and

"'Occurrence' means an accident, including continuous or repeated exposure to

substantially the same general harmful conditions, which results, during the policy period, in:

a. 'Bodily injury'; or b. 'Property damage'." (Doc. 6-3 at 7 (Policy Definitions).)

Section II of the Policy addresses "Liability Coverages" wherein Coverage E for

"Personal Liability" sets out the following in pertinent part:

5

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. . . . ; and

2. Provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.

(Doc. 6-3 at 17 (Policy COVERAGE E).)

Section III of the Policy identifies "Exclusions" and states as follows in relevant part:

"Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to 'bodily injury' or 'property damage': . . . k. Arising out of sexual molestation, corporal punishment or physical or mental abuse.'" (Doc. 6-3 at 11, 12.)   An Amendatory Endorsement in the Policy states the following:

Item 1.a. under Coverage E – Personal Liability and Coverage F – Medical Payments to Others is amended as follows:

For "bodily injury" or "property damage" that results from or may reasonably be expected to result, from the intentional or criminal acts or omissions of an "insured," even if it

(1) is of a different kind, quality, or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Doc. 6-3 at 36 (Policy Amendatory Endorsement).)

## III. LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U. S. at 555, 127 S.Ct. 1955 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." (*Id.*) A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint; First, the court must take note of the

7

elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat" an affirmative defense. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) (citations omitted). "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense ... in the answer, not in a motion to dismiss." (*Id.* at 249) (citing *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)). The Third Circuit Court of Appeals has explained that "[g]enerally speaking, we will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6). A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however." *In re Tower Air,* 416 F.3d 229, 238 (3d Cir.2005) (internal citations omitted); *see also Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 F. App'x 92, 98 (3d Cir. 2014) (citing *Victaulic Co. v. Tiernan*, 499 F.3d 227 (2007) (quoting *In re Tower Air*, 416 F.3d at 238)).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d

Cir. 1993) (citations omitted); *accord Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Schmidt*, 770 F.3d at 249 (internal citations and quotation marks omitted).

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

With the pending motion, Defendant asks the Court to issue an order declaring that Liberty Mutual is not obligated to defend D.H. and N.H. in connection with the civil action filed in the Court of Common Pleas of Monroe County, that it is not obligated to pay any judgment entered against D.H. and N.H. in connection with the civil action filed in state

court, and that it is not obligated in any way to Doe Plaintiffs. (Doc. 6 at 6-7.) The parties

do not dispute that the law of Pennsylvania governs the interpretation of the policy at issue

or that jurisdiction is proper in this Court. (*See* Docs. 7, 9.) The parties rely on the

allegations contained in the Declaratory Judgment Complaint, the underlying state court

complaint, and D.H.'s Policy to support their respective positions. (*See, e.g.,* Docs. 7, 9.)

Thus, the Court concludes that review of the merits of the pending motion under

Pennsylvania law is appropriate.

In applying Pennsylvania substantive law in this diversity action, the Court looks first

to decisions of the Supreme Court of Pennsylvania and, if there is not a reported decision

by the Supreme Court of Pennsylvania addressing the precise issue being considered, it is

the Court's duty to predict how that court would decide the issue. *Nationwide Mut. Ins. Co.*

*v. Buffetta,* 230 F.3d 634, 637 (3d Cir. 2000).

> In so doing, a federal court can also give due regard, but not conclusive effect,
> to the decisional law of lower state courts. *See, e.g., Burke v. Maassen,* 904
> F.2d 178, 182 (3d Cir.1990). The opinions of intermediate appellate state courts
> are "not to be disregarded by a federal court unless it is convinced by other
> persuasive data that the highest court of the state would decide
> otherwise." *West v. AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139
> (1940).

*Buffetta,* 230 F.3d at 637.

Under Pennsylvania law, the interpretation of insurance contracts is a matter of law

for the courts to decide. *Allstate Prop. & Cas. Ins. Co. v. Squires,* 667 F.3d 388, 391 (3d

Cir. 2012) (citing *Paylor v. Hartford Ins. Co.,* 640 A.2d 1234, 1235 (Pa. 1994)); *see also*

10

*Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004). In *401 Fourth Street, Inc. v. Investors Ins. Group,* 879 A.2d 166 (Pa. 2005), the Supreme Court of Pennsylvania stated the "purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Id.* at 171. When the language of the policy is clear and unambiguous, the reviewing court is to give effect to that language. *Id.* at 170; *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 897 (Pa. 2006). However, "when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Id.*

In *Kvaerner*, the Supreme Court of Pennsylvania explained that

[i]t is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. In *Mutual Benefit Insurance Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999), we stated [that] "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." *Id., citing General Accident Insurance Co. v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997). This principle has been long held in this Commonwealth as well as in other jurisdictions. In *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A.2d 304, 307 (1954), we explained "[t]he rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint in the action." *Id.*

908 A.2d at 896. To determine if there is coverage, a reviewing court "must look to the *facts* alleged in the underlying complaint, not the cause of action pled." *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222, 1225 (2007) (citing *Donnegal Mut. Ins. Co. v.*

11

*Baumhammers*, 893 A.2d 797, (Pa. Super. Ct. 2006), *aff'd in part, rev'd in part on other*

*grounds*, 936 A.2d 286 (2007)). As explained in *Baumhammers*, the Pennsylvania

Supreme Court ruled in *Haver*

> that the *facts* contained in the underlying complaints must be examined to
> determine the existence of coverage and that averments of negligence which
> ring hollow under the recited facts cannot create coverage where none exists:
> "the particular cause of action that a complainant pleads is not determinative of
> whether coverage has been triggered. Instead, it is necessary to look at the
> factual allegations contained in the complaint." . . . 725 A.2d at 745. Our
> Supreme Court aptly observed, "to allow the manner in which the complainant
> frames the request for redress to control in a case such as this one would
> encourage litigation through the use of artful pleadings designed to avoid
> exclusions in liability insurance policies." *Id.; see also Kvaerner Metals, supra.*

893 A.2d at 811.

"An insurer's duty to defend is distinct from, and broader than, its duty to indemnify

an insured. . . . An insurer must defend its insured if the underlying complaint alleges facts

which, if true, would actually or *potentially* bring the claims within the policy coverage." *Bd*

*of Pub. Educ. of the Sch. Dist. of Pittsburgh v. National Union Fire Ins. Co.*, 709 A.2d 910,

913 (Pa. Super. Ct. 1998) (en banc) (citations omitted).

"The duty to defend is broad, but if all claims of the underlying complaint are outside

the policy's scope, there is no duty to defend or indemnify." *First Liberty Ins. Corp v. MM*,

745 F. App'x 195, 197 (3d Cir. 2018) (citing *Caplan v. Fellheimer Eichen Braverman &*

*Kaskey*, 68 F.3d 828, 831 n.1 (3d Cir. 1995) ("Under Pennsylvania law, when an insured

tenders multiple claims to an insurer for defense, the insurer is obligated to undertake

defense of the entire suit as long as at least one claim is potentially covered by the policy.

As to indemnification, however, the insurer is obligated to its insured only for those damages which are actually within the policy coverage.")).

"An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion." *Id.* (citation omitted). "Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured." *Swarner v. Mutual Benefit Group*, 72 A.3d 741, 645 (Pa. Super. Ct. 2013).

With the pending motion, Defendant specifically asserts that it has no duty to defend or indemnify N.H. and/or D.H. because the sexual molestation exclusion and the intentional or criminal acts exclusion bar coverage for injury arising out of N.H.'s improper sexual activity, it has no duty to defend N.H. because the underlying complaint does not allege that John Doe 1's injuries were caused by an accident, and because it has no duty to defend, it can have no duty to indemnify. (Doc. 7 at 20-36.) Plaintiffs respond with five arguments: 1) Defendant has a duty to defend and/or indemnify D.H. and N.H. "where the exclusion cited by the Defendant is not applicable to the claims against N.H. where he negligently exposed minor Plaintiff John Doe to pornographic videos" (Doc. 9 at 13); Defendant has a duty to defend and/or indemnify D.H. "where the exclusion cited . . . is not applicable to the claims against D.H. in her negligent supervision of minor N.H. and minor Plaintiff John Doe 1" (*id.* at 16); 3) Defendant has a duty to defend and/or indemnify D.H. and N.H. in the underlying action "where the provisions cited by Defendant are ambiguous as to what constitutes bodily injury under the Policy" (*id.* at 17); 4) "the intentional or criminal acts exclusion . . . does not

13

apply to claims against N.H. and D.H." (*id.* at 21); and 5) "[t]he underlying Complaint alleges sufficient facts to establish that minor Plaintiff John Doe 1's injuries were caused by an 'occurrence' or 'accident' as defined in the policy" (*id.* at 22).

Magistrate Judge Carlson concluded that Defendant's motion should be granted because the sexual molestation exclusion bars coverage for the claims against N.H. and D.H. (Doc. 17 at 9.) In so finding, he did not undertake an analysis of the applicability of the intentional or criminal act exclusion. (*Id.* at 9 n.1.) However, the R&R contains an analysis of the remaining arguments proffered by Plaintiffs in opposition to the motion and reached the following conclusions: the allegations in the Complaint do not give rise to an "accident" or "occurrence" as to N.H. (Doc. 17 at 10-11); the definition of "bodily injury" in the policy is not ambiguous (*id.* at 12-13); negligence claims against N.H. for forcing John Doe 1 to watch pornographic videos are "artful pleading" which do not trigger coverage (*id.* at 17-18); and negligence claims against D.H. arise out of N.H.'s sexual molestation of John Doe 1 and, therefore, are excluded by the policy (*id.* at 15).

Plaintiffs object to all of these findings.[1] (*See* Docs. 18, 19.) Thus, the Court will undertake *de novo* review of the issues raised. Because the definition of "bodily injury"

---

[1] In response to Plaintiffs' objections, Defendant again asserts the applicability of the Policy's intentional or criminal act exclusion. (Doc. 20 at 22.) Although Plaintiffs specifically addressed this argument in their initial brief in response to Defendant's motion (Doc.9 at 21-22), their reply regarding objections does not specifically address the intentional or criminal act exclusion but states generally that claims of negligence in the Complaint against N.H. and D.H. potentially bring Plaintiffs' claims within the Policy coverage. (*See, e.g.*, Doc. 21 at 4, 6.)

contained in the Policy is a threshold issue, the Court will first address Plaintiff's objections
related to the definition.

## A.  Bodily Injury

Plaintiffs lodge several objections related to the Magistrate Judge's findings
regarding the term "bodily injury" including the following: 1) the Magistrate Judge erred "in
holding that emotional distress cannot constitute bodily injury under an insurance policy
under Pennsylvania law" (Doc. 18 ¶ 22); 2) "pursuant to Pennsylvania law emotional
distress claims have been held to constitute a 'bodily injury' in the insurance context" (*id.* ¶
23); and 3) the "Report and Recommendation erred in concluding that the definition of
'bodily injury' in the subject Policy was unambiguous" (*id.* ¶ 29). Defendant argues that the
"general rule" that emotional distress cannot constitute bodily injury under an insurance
policy in Pennsylvania law applies in this case. (Doc. 17 at 13; Doc. 20 at 15.) The Court
concludes that the Policy definition of "bodily injury" may include mental and psychological
harm and, therefore, injuries alleged in the underlying complaint (Doc. 3 ¶ 9) do not exclude
coverage by operation of law.

Although the Pennsylvania Supreme Court has not decided the precise issue or
interpreted the definition of "bodily injury" found in the Policy, the Court finds support in
Pennsylvania law for Plaintiffs' position that emotional distress can constitute "bodily injury"
in the insurance context. (*See, e.g.*, Doc. 19 at 11 (citing *Lipsky v. State Farm Mutual Ins.
Co.*, No. 565 EDA 2010 (2011 WL 11745706 (Pa. Super Ct. 2011 (not precedential); *Zerr v.*

15

*Erie Ins. Exch.*, 667 A.2d 237 (Pa. Super. Ct. 1995)).) The Court's determination is based primarily on the Pennsylvania Superior Court's decision in *Glikman v. Progressive Cas. Ins. Co.*, 917 A.2d 872 (Pa. Super. Ct. 2007), this Court's discussion of that decision in *Becker v. Farmington Cas. Co.*, Civ. A. No. 1:08-CV-2228, 2010 WL 2898810, at *3 n.7 (M.D. Pa. July 22, 2010), and the thorough analysis of the issue set out in *Allstate Property and Cas. Ins. Co. v. Winslow*, 66 F. Supp. 3d 661 (W.D. Pa. 2014).

In *Glikman*, the Pennsylvania Superior Court considered the definition of "bodily injury" in an automobile policy. The policy defined "bodily injury" as "bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." 917 A.2d at 873. *Glikman* found that

> pursuant to Appellee's policy, there are four separate types of "bodily injury": bodily harm, sickness, disease, and/or death that results from the first three. "Disease" is a separately identified bodily injury in the policy. As the policy language clearly states that "bodily injury" includes any "disease" caused by an automobile accident, we must give effect to the language of the contract. Thus, under the language of Appellee's policy, contraction of a "disease" caused by an accident arising out of the maintenance or use of a motor vehicle is a specifically covered bodily injury under the policy. As Appellee neither disputes that post-traumatic stress disorder is a disease nor the cause of Appellant's suffering, we find she has sustained a bodily injury within the meaning of the policy.

*Glikman*, 917 A.2d at 873. In *Becker*, this Court considered the defendant's moton to dismiss Virginia Becker's diversity action for declaratory judgment in which she alleged that the defendant breached its contractual duty to defend and indemnify her in an underlying lawsuit which arose from allegations of child molestation where claims against the plaintiff's

16

husband, Leon Becker, included sexual assault of a minor, C.B., and claims against the

plaintiff sounded entirely in negligence with the basic allegation that the plaintiff allowed the

child molestation to occur. 2010 WL 2898810, at *1. *Farmington* argued that it had three

bases for denying coverage:

> First, Farmington states that the underlying tort action has as its central fact the
> molestation of C.B. by Leon Becker. As a matter of law, sexual molestation is
> an intentional act. Hence, Farmington asserts that the intentional act exclusion
> bars coverage for all insureds who might be held liable for injuries arising from
> this criminal conduct. Second, according to Farmington, the specific exclusion
> for injuries arising from sexual molestation also bars coverage for all insureds
> who might be liable for those injuries. Third, Farmington argues that the injuries
> as alleged in the underlying complaint are emotional, mental, or psychological
> in nature and therefore fall outside the definition of "bodily injury" developed by
> Pennsylvania courts. The complaint fails to *describe* any physical injuries, and
> the court should find conclusory allegations to be insufficient to state a claim.

2010 WL 2898810, at *3 (internal citations omitted).[2] Although *Becker* focused on the

exclusion of coverage for intentional injuries caused by an insured because the resolution of

the issue was dispositive, harm related to the sexual molestation of a minor was discussed

in the margin:

> The allegations of sexual molestation and contact with a child's genitals in the
> underlying complaint do not strike the court as inconsistent with
> characterizations of "physical harm" or "bodily injuries." Farmington only cites
> cases involving adults for the proposition that sexual contact, without more, is
> not "bodily injury." Moreover, the allegations of "permanent" psychological
> injuries expected to affect the child's life into adulthood raise the possibility of
> a diagnosed or diagnosable psychiatric disorder. In *Glikman v. Progressive
> Cas. Ins. Co.,* 917 A.2d 872 (Pa.Super.2007), the Superior Court of
> Pennsylvania accepted the proposition that a psychiatric disorder can be a

---

[2] The Court noted that it "need only find in Farmington's favor on one of the issues in order to
dismiss the action." 2010 WL 2898810, at *3.

"disease" within the definition of "bodily injury." 917 A.2d at 873 (finding that a litigant who suffers from post-traumatic stress disorder has a "disease" and has thereby "sustained a bodily injury within the meaning of the policy"). The policy at issue in the instant case also defines "bodily injury" to include "disease," . . . and therefore, the injuries allegedly sustained by C.B. may fall within the ambit of this definition.

2010 WL 2898810, at *3 n.7.

In *Winslow*, the district court thoroughly reviewed how various courts had interpreted insurance policy definitions of the term "bodily injury" in the context of a declaratory judgment action where the insurer sought a declaration that it had no duty to defend or indemnify the insureds in underlying actions, noting that "[t]he most recent Pennsylvania appellate decision of any precedential authority that addresses the question before this court is *Glikman*."[3] 66 F. Supp. 3d at 672. As explained in *Winslow*, a comparison of Pennsylvania case law shows that subtle distinctions in the definition of the term "bodily injury" is determinative:

- Where an insurance policy defines the term "bodily injury" as physical harm and any sickness, illness, or disease that *results from* that physical harm, allegations that a victim suffered some condition as the result of mental or emotional distress do not trigger coverage (referred to herein as "resulting

---

[3] *Winslow* noted that

[t]he Pennsylvania Superior Court's decision in *Lipsky* is unpublished, and not precedential. *Lipsky v. State Farm Mut. Auto. Ins. Co.,* No. 565 EDA 2010, 2011 WL 11745706 (Pa.Super.Ct.2011); Pa.Super. Ct. Inter. Op. Proc. 65.37. The Pennsylvania Supreme Court affirmed, but without opinion and only by operation of law, because the votes among eligible justices were equally divided. *Lipsky v. State Farm Mut. Auto. Ins. Co.,* 624 Pa. 224, 84 A.3d 1056 (2014).

66 F. Supp. 3d at 672 n.3.

disease"). Where the term "bodily injury" is defined to require a resulting disease, a physical harm or injury of some kind is a prerequisite to recovery for any illness, sickness, or disease that subsequently develops. It follows that a sickness or disease that results from a mental injury cannot qualify, because a mental injury cannot satisfy the prerequisite that a physical injury be suffered first.

- Where an insurance policy lists sickness, illness, or disease as among several, separable kinds of "bodily injury," illnesses, sicknesses, or diseases can constitute "bodily injury," even if the insured suffered no physical harm or injury first (referred to herein as "independent disease"). Where the term "bodily injury" is defined to include independent diseases, coverage is triggered if an ailment or condition that qualifies as a sickness, illness, or disease results from an incident, to the same extent as if a bruise, cut, or broken bone results from an incident. Because a physical harm is not required to trigger coverage, conditions caused by mental distress can qualify as "bodily injury."

*Winslow*, 66 F. Supp. 3d at 673. It is the precise language used in a policy that creates the critical distinction in the scope of coverage. *Id.*

Similar to the policy language in *Glikman* and *Becker* and that found not to require physical harm in *Winslow*, here the Policy defines "Bodily Injury" as "bodily harm, sickness *or* disease, including required care, loss of services and death that results." (Doc. 6-3 at 7 (emphasis added).) The similarity in the Policy's definitional language to the cases cited above, i.e, the Policy's statement of the sources of "bodily injury" in the disjunctive, provides support for interpreting "bodily injury" to include psychiatric disorders with or without "bodily harm." In other words, under Pennsylvania law, the definition of "bodily injury" in the Policy at issue does not necessarily require "bodily harm" to trigger coverage for "sickness or disease" and, thus, "sickness or disease" caused by mental distress can qualify as "bodily injury."

In arguing that "[u]nder Pennsylvania law, 'bodily injury' requires physical injury,"
Defendant quotes *Coreigis Ins. Co. v. City of Harrisburg*, 401 F. Supp. 2d 398, 404 (M.D.
Pa. 2005), for the proposition that "'Pennsylvania courts have soundly rejected the
contention that policy definitions of injury or bodily injury encompass mental or emotional
harm.'" (Doc. 11 at 14.) In its discussion of the issue, Defendant cites only federal district
court cases which have interpreted Pennsylvania law. (*See, e.g.*, Doc. 11 at 14 (citing
*Coreigis*, 401 F. Supp. 2d at 404; *Kline v. The Kemper Group*, 826 F. Supp. 123, 130 (M.D.
Pa. 1993); *Babacola v. Donegal Group, Inc.*, Civ. A. No. 1:08-CV-621, 2008 WL 4006721
(M.D. Pa. Aug. 26, 2008)).) Defendant does not seek to distinguish or address *Glikman* or
acknowledge cases which disagree with Defendant's categorical exclusion of mental or
emotional harm. Importantly, *Coreigis* and *Kline* were decided before the Superior Court's
*Glikman* decision, and *Babacola* merely cited *Glikman* and distinguished it on the facts,
2008 WL 4006721, at *4.[4]

In light of the absence of controlling Pennsylvania Supreme Court precedent on the
issue and the lack of adequate support for Defendant's interpretation of the term "bodily
injury" in the Policy, the Court will interpret the term "bodily injury" in the Policy in the light

---

[4] No precedential appellate decision in Pennsylvania has rejected *Glikman*. In *Steadfast Ins. Co.
v. Tomei*, Nos. 277 WDA 2015, 478 WDA 2015, 479 WDA 20215, 2016 WL 2989982 (Pa. Super. Ct. May
24, 2016), the Superior Court distinguished *Glikman* in a non-precedential opinion on the basis that the
plaintiffs had alleged vague physical symptoms brought on by their emotional distress after learning that
offensive videos had been posted to the internet. *Id.* at *4-5. The Superior Court concluded that the trial
court had correctly held that "the underlying plaintiffs' claims for emotional distress, humiliation and
embarrassment did not qualify as claims for 'bodily injury.'" *Id.* at 5.

most favorable to Plaintiffs and the insureds.[5] Here the definition in the Policy, expressed in the alternative, provides that bodily injury includes more than physical injury—it also includes "disease or sickness" and "disease or sickness" can encompass mental and psychological disorders which either have been or may be diagnosed. In sum, consistent with *Glikman*, *Becker*, and *Winslow*, the term "bodily injury" in the Policy does not require a physical harm to trigger coverage, and conditions caused by mental distress can qualify as "bodily injury." *Glickman*, 917 A.2d at 873; *see also Winslow*, 66 F. Supp. 3d at 673; *Becker*, 2010 WL 2898810, at *3 n.7.

Here the underlying Complaint alleges that John Doe 1

has suffered great emotional distress resulting in anxiety, self aggression, stomachaches, decreased appetite, sleep disruption and shock to his nerves and nervous system, all of which caused her [sic], continue to cause him and will/may cause him for an indefinite time in the future, great pain, agony and suffering, both physical and mental.

(Doc. 3 ¶ 9.) Though the allegations in the underlying complaint do not allege that John Doe 1 has a diagnosis of post-traumatic stress disorder as in *Glikman*, the allegations include physical manifestations of stress including stomachaches and sleep disruption which may be deemed sickness and/or support the diagnosis of a disease such as the PTSD diagnosed in *Glikman*. Further, the allegations are more than the general allegations

---

[5] *Winslow* provides a thorough review of the issue and concludes that the Supreme Court of Pennsylvania would apply the reasoning set out in *Glikman* in determining that the contractual language at issue triggered the insurer's duty to defend and indemnify. *Winslow*, 66 F. Supp. 3d at 672-78.

of "'permanent' psychological injuries expected to affect the child's life into adulthood" which were found to "raise the possibility of a diagnosed or diagnosable psychiatric disorder" in *Becker*, 2010 WL 2898810, at *3 n.7. Therefore, the Court concludes that, interpreting the Policy in the light most favorable to Plaintiffs and insureds, coverage for claims made in the underlying state court complaint is not foreclosed based on a failure to allege bodily injury.

## B. Occurrence

Defendant argues that, because the underlying state court complaint does not allege that John Doe 1's injuries were caused by an accident, it has no duty to defend N.H. (Doc. 7 at 31.) Plaintiffs state that the underlying complaint alleges sufficient facts to establish that John Doe 1's injuries were caused by an "occurrence" or "accident" as defined in the policy. (Doc. 9 at 22.) The Court agrees that the facts alleged in the underlying complaint do not trigger Defendant's duty to defend N.H. on the basis that the injuries caused by N.H. were not the result of an accident.

As set out above, "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage'." (Doc. 6-3 at 7 (Policy Definitions).) Section II of the Policy addresses "Liability Coverages" wherein Coverage E for "Personal Liability" sets out the following in pertinent part:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

22

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. . . . ; and

2. Provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.

(Doc. 6-3 at 17 (Policy COVERAGE E).)

The Supreme Court of Pennsylvania discussed the meaning of the word "accident"

as used to define "occurrence" in an insurance policy in *Donegal Mut. Ins. Co. v.*

*Baumhammers*, 938 A.2d 286 (Pa. 2007), in analyzing an insurer's duty to defend parents

charged with acting negligently by failing to take actions relative to their son's mental health

and possession of weapons before he went on a shooting rampage. Stating that to

determine whether the insurer has a duty to defend

it is necessary for this Court to examine whether the injuries that are the impetus of the action were caused by an "accident" so as to constitute an occurrence under the policy. The Donegal homeowners insurance policy provides no definition of the term "accident." However, we have established that the term "accident" within insurance policies refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the "accident" is "unexpected" which implies a degree of fortuity. *Kvaerner*, 589 Pa. at 333, 908 A.2d at 898. An injury therefore is not "accidental" if the injury was the natural and expected result of the insured's actions. *See Lower Paxton Twp. v. U.S. Fidelity and Guar. Co.,* 383 Pa.Super. 558, 567, 557 A.2d 393, 398 (1989) ( "[An] [a]ccident is an event that takes place without one's foresight or expectation. It is an undesigned, unexpected event. The term accident within the meaning of an insurance policy is an event happening by chance unexpectedly taking place. It is the opposite of something likely to occur, foreseeable in due course."). *See also Minnesota Fire and Cas. Co. v. Greenfield,* 579 Pa. 333, 359, 855 A.2d 854, 870 (2004) (" 'Accident' has been defined in the context of insurance contracts as an event or happening without human agency or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.") (citations omitted).

. . . .

In the instant case . . . we are required to determine whether, from the perspective of the insured, the claims asserted by Plaintiffs present the degree of fortuity contemplated by the ordinary definition of "accident." We hold that they do. The extraordinary shooting spree embarked upon by Baumhammers resulting in injuries to Plaintiffs cannot be said to be the natural and expected result of Parents alleged acts of negligence. Rather, Plaintiffs' injuries were caused by an event so unexpected, undesigned and fortuitous as to qualify as accidental within the terms of the policy. Because the alleged negligence of Parents resulted in the tragic accidental injuries to the individual plaintiffs, Donegal is therefore required to defend Parents.

Baumhammers, 938 A.2d at 293.

As in Baumhammers, the term "accident" is not defined in the Policy. The Court

agrees with Defendant and the Magistrate Judge that N.H.'s intentional conduct as alleged

in the underlying complaint cannot be considered an accident when analyzed in the context

of Baumhammers definition of the term under Pennsylvania law. (See, e.g., Doc. 7 at 31-

35; Doc. 17 at 11.) Therefore, the "occurrence" required to trigger coverage is absent as to

N.H.

Defendant does not seek to preclude coverage for claims of negligent supervision

against D.H. on the basis that no accident occurred as to her. (See Doc. 7 at 31-35.) This

limitation is appropriate based on the general principle that "'the test of whether the injury is

a result of an accident is to be determined from the viewpoint of the insured and not from

the viewpoint of the one that committed the act causing the injury,'" Baumhammers, 938

A.2d at 292 (quoting Mohn v. Am. Casualty Co. of Reading, 326 A.2d 346, 348 (Pa. 1974)),

and the Supreme Court's conclusion that Pennsylvania law may require an insurer to defend a parent against claims of negligence even where the alleged negligence may have led to the intentional acts of a third party, 938 A.2d at 292. Thus, absent an applicable exclusion, Defendant would be required to defend and indemnify D.H.

## C. Policy Exclusions

### 1. Intentional or Criminal Act Exclusion[6]

Defendant asserts that there can be no dispute that the intentional or criminal acts exclusion applies to bar coverage for both N.H. and D.H. based on the reading of the underlying complaint. (Doc. 7 at 30.) Plaintiff responds that the exclusion does not apply to claims against N.H. and D.H.: claims against N.H. arising out of N.H. forcing John Doe 1 to watch pornographic videos do not fall within the intentional or criminal acts exclusion; and claims against D.H. are for negligent supervision rather than intentional or criminal acts. (Doc. 9 at 21-22.) The Court concludes that Defendant has no obligation to defend or indemnify N.H. or D.H. based on the intentional or criminal act exclusion.

An Amendatory Endorsement in the Policy states the following:

Coverage E – Personal Liability and Coverage F – Medical Payments to Others is amended as follows:

---

[6] Although Magistrate Judge Carlson did not address discuss this exclusion because he found that the claims against D.H. and N.H. were precluded by the sexual molestation exclusion (Doc. 17 at 9 n.1), as will be discussed later in the text, the Court finds the intentional or criminal acts exclusion dispositive as to both N.H.and D.H. whereas the sexual molestation exclusion is not clearly dispositive as to D.H.

For "bodily injury" or "property damage" that results from or may reasonably be expected to result, from the intentional or criminal acts or omissions of an "insured," even if it

    (1)   is of a different kind, quality, or degree than initially expected or intended; or

    (2)   is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Doc. 6-3 at 36 (Policy Amendatory Endorsement).) As noted by Defendant, "[u]nder

Pennsylvania law, '[t]he criminal acts exclusion is not ambiguous. It applies to 'intentional or

criminal acts,' not just intentional criminal acts.'" (Doc. 7 at 29 (quoting *Allstate Ins. Co. v.*

*Williams*, Civ. A. No. 13-3048, 2014 WL 4682022, at *4 (E.D. Pa. Sept. 22, 2014)).)

In the section of their responsive brief addressing the intentional or criminal act

exclusion, Plaintiffs state that

Defendant fails to acknowledge that Plaintiffs' Declaratory Judgment Complaint alleges that minor N.H. forced minor Plaintiff John Doe 1 to watch pornographic videos. Specifically, on the day of the underlying incident, minor Plaintiff John Doe 1 was visiting minor N.H. at his residence. While minor Plaintiff John Doe 1 was visiting with N.H., N.H forced minor Plaintiff John Doe 1 to watch pornographic videos. This caused minor Plaintiff John Doe 1 to sustain severe and permanent injuries, as described herein in detail. Minor N.H.'s actions in forcing minor Plaintiff John Doe 1 does not fall within the intentional or criminal acts exclusion.

(Doc. 9 at 21-22.) This conclusory statement does not provide any basis to conclude that

"forcing" Plaintiff John Doe 1 to watch pornographic videos was not intentional.

Elsewhere in their brief, Plaintiffs characterize N.H.'s forcing John Doe 1 to watch pornographic videos as "N.H. negligently exposing minor Plaintiff John Doe 1 to pornographic videos." (Doc. 9 at 11; *see also id.* at 13; Doc. 19 at 11; Doc. 21 at 5.) The conclusory characterization is unavailing in that "forcing" another to do something cannot be seen as anything but intentional.

The Court agrees with Magistrate Judge Carlson that Plaintiffs' claims of negligence regarding the pornographic videos are "artful pleading" where Plaintiffs state that N.H. "forced" Plaintiff John Doe 1 to watch the videos. (*See* Doc. 17 at 14.) As set out above, the Court must look to the facts pled rather than the cause of action identified. *Haver*, 725 A.2d at 745, *QBE Ins. Corp.*, 915 A.2d at 1225; *Baumhammers*, 725 A.2d at 811. Here Defendant correctly asserts that the factual allegation related to pornographic videos contained in Plaintiffs underlying state court complaint against N.H. and D.H. states that N.H. "forced Minor Plaintiff John Doe 1 to watch pornographic videos." (Doc. 11 at 12 (citing Doc. 3 ¶ 8).) Defendant also correctly avers that Plaintiffs "cannot change the nature of their claims by the opportunistic use of the work 'negligence' in their brief," noting that "courts have repeatedly found that the use of the word 'negligence' or 'negligently' in a complaint does not 'square the circle' and 'convert an intentional act into an act of mere negligence.'" (Doc. 11 at 12-13 (quoting *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 116 (3d Cir. 2009)). Because Plaintiffs do not point to anything in their underlying complaint from which the Court could find that N.H. forcing John Doe 1 to watch

27

pornographic videos becomes an act of negligence rather than an intentional act, the Court concludes Plaintiffs cannot evade the application of the intentional or criminal act exclusion to N.H. on the basis of negligence claims against N.H.

Turning now to the application of the exclusion to D.H., the Court agrees that claims against D.H. are for negligent supervision which do not constitute "intentional or criminal act[s]" (Doc. 9 at 21-22). However, the inquiry whether the exclusion forecloses coverage for D.H. does not end there because the intentional or criminal act exclusion bars coverage if the bodily injury resulted from the intentional or criminal act of "an insured" (Doc. 6-3 at 36).

Pennsylvania courts have consistently concluded that the use of the phrase "an insured" or "any insured" in an exclusion clause bars coverage for the person who acted intentionally or criminally and for a person charged with related acts of negligence. *Baumhammers*, 893 A.2d at 818-19; *McAllister v. Millville Mut. Ins. Co.*, 640 A.2d 1283, 1288 (Pa. Super. Ct. 1994). Federal courts applying Pennsylvania law to insurance policy exclusionary provisions interpret the phrase "an insured" or "any insured" in an intentional or criminal act exclusion to bar coverage for a co-insured who did not commit an intentional or criminal act. For example, in *Allstate Indem. Co. v. Batzig*, 270 F. App'x 154 (3d Cir. 2008) (not precedential), the Third Circuit panel emphasized that "[t]he fact that the Parents did not engage in any intentional behavior is irrelevant." *Id.* at 156-57 (quoting *Baumhammers*, 893 A.2d at 818: "'The fact that the Parents did not engage in criminal behavior is

28

immaterial because the [insurance] policy exclusion applies to criminal behavior of *any* insured.'"); *see also Travelers Home and Marine Ins. Co. v. Stahley*, 239 F. Supp. 3d 866, 872-74 (E.D. Pa. 2017); *Becker*, 2010 WL 2898810, at *3.

Because the Policy's intentional or criminal act exclusion includes the phrase "an insured," the Court concludes that the exclusion bars coverage for the alleged negligent acts of D.H. as well as the intentional acts of N.H. Therefore, based on application of the exclusion, Defendant has no duty to defend or indemnify N.H. and D.H. in the underlying state court action.

## 2. Sexual Molestation Exclusion

With the conclusion that the intentional or criminal act exclusion bars coverage under the Policy for D.H. and N.H. in the underlying state court action, analysis of the sexual molestation exclusion is not necessary. However, for the sake of clarity regarding consideration of Plaintiffs' objections to the R&R, the Court will briefly discuss salient findings regarding the sexual molestation exclusion.

The sexual molestation exclusion provides as follows: "Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to 'bodily injury' or 'property damage': . . . k. Arising out of sexual molestation, corporal punishment or physical or mental abuse." (Doc. 6-3 at 11, 12.)

First, the Court notes that Plaintiffs initially urged the Court to adopt a definition of bodily injury to include emotional distress and mental illness manifested by physical

29

symptoms as a general proposition (Doc. 9 at 15-16) but later urged the Court to find that alleged mental and psychological injuries arising from sexual molestation precluded application of the sexual molestation exclusion (Doc. 9 at 19-20). Having interpreted the definition of "bodily injury" in the Policy in the light most favorable to Plaintiffs and insureds, i.e., finding the broad definition of "bodily injury" supported by Pennsylvania law (which may include mental or psychological sickness or disease) to be the operative definition in the Policy, *see supra* pp. 15-22, the Court cannot adopt a different interpretation of the term (categorically excluding mental and psychological injuries) in a specific provision where the Policy provides no basis for an alternative definition. Plaintiffs provide, and the Court finds, no basis to apply a different definition in the context of the sexual molestation exclusion. Therefore, with the interpretation of "bodily injury" adopted by the Court, the sexual molestation exclusion bars claims for mental and psychological injuries as well as physical injuries and bars coverage for claims against N.H. based on his sexual molestation of John Doe 1.

Second, the Court is not persuaded that the sexual molestation exclusion bars coverage for negligent supervision claims against D.H. because those claims "arise out of" the sexual molestation. (*See, e.g.*, Doc. 11 at 9.) Defendant correctly notes that several courts around the country have found that exclusionary clauses which include language such as "arise out of" bar coverage for all insureds who might be liable for the prohibited conduct even where the charge against the individual insured is for negligent supervision.

(*Id.* at 9-10 & n.2.) However, interpretation of the language under Pennsylvania law has not been consistent.

Defendant posits that "[u]nder Pennsylvania law, 'arising out of' means 'causally connected with.'" (Doc. 11 at 7 (quoting *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989)).) *Forum* indeed stands for the proposition asserted and *Forum* relied on *McCabe v Old Republic Ins. Co.*, 228 A.2d 901 (Pa. 1967), where the Pennsylvania Supreme Court considered a policy which "excluded from coverage liability on the part of [the plaintiff] for injuries or death of an employee 'arising out of and in the course of his employment by the insured," 228 A.2d at 903. *Forum* quoted *McCabe* as holding that "'arising out of means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.'" 866 F.2d at 82 (quoting *McCabe*, 228 A.2d at 903); *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999) (citing *McCabe*, 228 A.2d at 903 for the proposition that the "phrase 'arising out of,' used in policy exclusion, was not ambiguous and indicated 'but for' or 'cause and result' relationship.").

However, in policy exclusion contexts more similar to those at issue in this case, Pennsylvania courts and courts applying Pennsylvania law have not consistently interpreted policy exclusions which include "arising out of" language to preclude coverage for claims of negligence related to the excluded conduct. In *Bd. of Pub. Educ.*, the Superior Court concluded that exclusion of coverage for claims "arising out of . . . assault or battery" or

31

"arising out of . . . bodily injury" did not apply to related negligent acts. 709 A.2d at 916.

*Bd. of Pub. Educ.* summarized its determination regarding whether negligence arises from

the subsequent wrongdoing: "Where it is alleged that negligence allowed a crime to occur,

does the claim against the negligent arise from the negligence or from the criminality? We

believe it is the former." *Id.* at 917. *Becker* relied on *Bd. of Pub. Educ.* in noting that the

claims against the plaintiff arose out of negligent acts or omissions rather than sexual

molestation. 2010 WL 2898810, at *3 n.7 (citing *Bd. of Pub. Educ.*, 709 A.2d at 916-17).

*Becker* further noted that the insurer's contention that the language

> "bodily *injury* ... arising out of sexual molestation," . . . mandates a different
> result is not consistent with *Baumhammers.* 938 A.2d at 291–3. There, the
> Pennsylvania Supreme Court explained that the cause of "injuries" must be
> analyzed from the perspective of each co-insured defendant. *Id.* That the
> efficient cause of the alleged injuries is excluded conduct by one insured does
> not preclude defense and indemnification for a co-insured whose negligence is
> alleged to have enabled the misbehavior. *Id.*

2010 WL 2898810, at *3 n.7; *see also Coreigis Ins. Co. v. City of Harrisburg*, Civ. A.

No. 1:03-CV-920, 2005 WL 2179734, at *12-13 (M.D. Pa. Sept. 9, 2015) (rejecting

insurer's argument that coverage for negligence claims barred coverage based on

reasoning of Bd. of Pub. Educ.).

Coreigis considered a policy which contained the phrase "arising out of" in policy

exclusions and discussed different interpretations of exclusionary clauses where an insured

was charged with negligence related to the tortious conduct of another, noting that "there

have been cases within Pennsylvania holding that an insurer is not under a duty to defend

or indemnify an insured where the tortious conduct alleged in the underlying complaint is intentional and the sole cause of the complainant's injury, and where the insurance policy at issue expressly excludes coverage for such actions. *Coreigis*, 2005 WL 2179734, at *10 (citing *Britamco Underwriters, Inc. v. Stokes,* 881 F. Supp. 196 (E.D. Pa. 1995); *Britamco Underwriters, Inc. v. Grzewkiewicz,* 639 A.2d 1208 (Pa. Super. Ct. 1994)). *Coreigis* found it significant that the applicable insurance policies in *Stokes* and *Grzewkiewicz* expressly excluded claims that the insured was negligent in failing to prevent the underlying intentional torts. 2005 WL 2179734, at *12. In *Coreigis*, the policy at issue did not expressly exclude claims of negligence against the insured county, even where it is claimed that the county's negligence led to certain intentional torts that would otherwise be excluded. *Id.* The court distinguished *Stokes* and *Grzewkiewicz* on this basis and applied the reasoning of *Bd. of Educ.* to find that the insurer had a duty to defend the insureds' negligent acts in the policy.[7] *Id.* at 12-13.

Though Defendant initially cites many cases to support their argument that the "arising out of" language in the sexual molestation exclusion precludes coverage for D.H. (Doc. 11 at 9-10 & n.2), the cases are from outside Pennsylvania. In its brief in opposition to Plaintiffs' objections (Doc. 20), Defendant points to *Metropolitan Property & Casualty Ins.*

---

[7] *Coreigis* also noted that allegations in the underlying complaint that the insured county's systemic failure led to injury were more similar to *Bd. of Pub. Educ.* which concerned the broad negligence of an institution that allowed and facilitated gross intentional misconduct than to the conduct in *Stokes* and *Grzewkiewicz* which concerned discrete injury arising out of alleged assault and battery. 2005 WL 2179734, at *13.

Co. v. Spayd, No. 5:16-CV-04693, 2017 WL 3141170 (E.D. Pa. July 24, 2017), where the court found, based on a policy exclusion for sexual molestation, that the insurer had no duty to defend the wife for negligent supervision claims related to sexual abuse claims against her husband. In finding that the policy provision which stated the insurer does "not cover bodily injury caused by or resulting from the actual, alleged or threatened sexual molestation or contact, corporal punishment, physical abuse or emotional abuse of a person" did not require the insured to defend the wife, the court did not rely on any Pennsylvania decision. Id. at *5 (citing Metropolitan Casualty Co. v. Sutherby, No. 3:09-CV-05387-FDB, 2010 WL 715491, at *4 (W.D. Wash. Feb. 24, 2010), and Allstate Inc. Co. v. Bates, 185 F. Supp. 2d 607, 613 (E.D.N.C. 2000).

Keeping in mind that "[e]xclusionary clauses generally are strictly construed against the insurer and in favor of the insured," Swarner, 72 A.3d at 645, and policy language is to be interpreted in the light most favorable to the insureds, the Court is not persuaded that the authority cited above definitively supports a finding under Pennsylvania law that the sexual molestation exclusion would bar coverage of the negligent supervision claims against D.H. Looking at cases which have specifically considered the language at issue here, the Court finds no reason to discount the Superior Court's en banc holding in Bd. of Pub. Educ. that exclusion of coverage for claims "arising out of . . . assault or battery" or "arising out of . . . bodily injury" did not apply to related negligent acts. 709 A.2d at 916. As applied to the facts of this case, the exclusion for claims of bodily injury "arising out of sexual molestation"

would not clearly apply to claims of negligent supervision against D.H. and Defendant would be obligated to defend her on those claims.

Because the Court has found that the intentional or criminal act exclusion precludes coverage for both N.H. and D.H., the Court need not make an alternative finding regarding the sexual molestation exclusion and will not do so. However, the Court notes that the divergent findings regarding the two exclusions is based on an important distinction between them: the sexual molestation exclusion does not include the phrase "an insured" or "any insured" which state and federal courts routinely interpret to bar coverage as to co-insureds who did not engage in the prohibited conduct. *See, e.g., Batzig*, 270 F. App'x at 156-57; *McAllister*, 640 A.2d at 1288; *Baumhammers*, 893 A.2d at 818-19. This distinction accounts for differing conclusions as to the intentional or criminal act exclusion which includes the phrase "an insured" and the sexual molestation exclusion which does not.

## D. Leave to Amend

As set out above, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

Here the Court concludes that amendment would be futile because the determination regarding Defendant's duty to defend and indemnify N.H. and D.H. must be based solely on the facts in the underlying action, *Kvaerner*, 908 A.2d at 896. Because the allegations in the underlying Monroe County Court of Common Pleas action provide the basis for the Court's determination, the Court concludes that any amendment of the Declaratory Judgment Complaint would be futile because the facts in the underlying Monroe County Court of Common Pleas action are fixed.

## V. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiffs have failed to state a claim upon which relief can be granted and the Motion of Defendant, Liberty Mutual Fire Insurance Company, to Dismiss the Complaint (Doc. 6) will be granted. Thus, the Court will adopt the R&R (Doc. 17) as modified by the foregoing findings. An appropriate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge